Ms. Foulds. Good morning. Good morning. Margaret Foulds, Assistant Federal Public Defender on behalf of Mr. Pinkston. May it please the Court. I am focusing on the bank robbery predicates and I'm going to rely on my briefs for the other issue. And just as a brief overview. I think Summers kind of forecloses the other issue, I think, but go ahead. So just for a brief overview for the robbery part. The boarding case makes clear that a defendant's mens rea for a crime of violence requires a subjective awareness by the defendant to a practical certainty of the harm that he will cause through his words and actions. This subjective awareness requirement is not present in the Kelly case. For bank robbery, Kelly only requires a negligent or at best a reckless mens rea as to the intimidation element of bank robbery. And that is not what boarding requires. So before we get into a fuller discussion on that. Carter v. Young State Supreme Court held that the actus reus for federal bank robbery is bank robbery is knowledge, right? It helped. Well, the Carter case was decided many, many years ago in the year 2000 when it was there was a different mens rea world. We had general intent and specific intent and it was denominated the bank robbery statute by intimidation as a general intent crime, which back in those days meant that the government had to prove basically. Boarding doesn't use specific intent. Excuse me? Boarding doesn't use specific intent. No. It says recklessness isn't enough. That's correct. So it seems to me the distinction between general and specific is irrelevant. Well, I'm just saying that with the Carter case, when the Carter case was decided and when the Kelly case was decided, the court was functioning under a different paradigm for mens rea. And so the Borden, true, now has a much more extensive and detailed analysis for the mens rea, which goes in much deeper. All it says is that, look, offenses criminalizing reckless conduct don't count. And this isn't reckless conduct. The federal bank robbery requires knowledge for that actus reus. I mean, Carter's still good law for that proposition, isn't it? Yes. But the thing about Borden is it didn't just come out with a label for recklessness. It actually delineated the different categories of mens rea. And significantly, it added and made clear that the defendant's awareness that his own actions were going to cause harm, not just that he had knowledge of his acts, but that he had knowledge of the result of his conduct. That subjective awareness is something that hasn't really been present in the prior analysis that we've been using. But I understood the Chief's point to be that there's still a spectrum. You've got general versus specific. So in your argument, you're saying even though the Supreme Court didn't use the phrase specific intent, that's still the most logical takeaway? No, I'm not saying that specific intent is required. I'm just saying that knowledge is required. And Carter said the actus reus for this offense is knowledge. As to the actus reus. But it didn't say that there had to be an awareness by the defendant. And in fact, the Kelly case, when you look at how it reads, it relies for the actus reus of intimidation. It relies on the reasonable person's standard. The act is intimidating without intending that effect. But Borden requires an awareness, and that's what the issue here, I believe, is. And if you look at the standard that Kelly uses for the intimidation element, it does not require any awareness of any kind, not even on the part of the victim. It doesn't care about the state of mind of the actual victim. It only cares about a state of mind of a theoretical victim. So it certainly does not address the defendant's awareness to a practical certainty, as Borden requires. Can you give me a hypothetical as to how someone would commit bank robbery? Sure, I can. Yeah, go ahead. There's actually a case. It's the Yackel case. I think it was the Eighth Circuit. And that was a case where a gentleman robbed a bank because his defense was that God told him that he had money in the bank. God also told him that he should withdraw money. And then after the robbery, he went to a liquor store, bought some liquor, and then he heard God tell him to give away the money to perfect strangers. That evidence about what his state of mind was, was not allowed within the case because his intent and his state of mind was irrelevant. So that shows an example of a case where this issue about the defendant's awareness definitely made a difference because he was convicted of bank robbery. All right, so you agree with me that the actus reus for the offense is the taking of property of another by force and violence or intimidation, right? Correct. And if knowledge is the mens rea requirement for the actus reus, that would at least require, at a minimum, knowing intimidation. What it requires is, and this is shown in Counterman, for intimidation or for threats, the actus reus is knowing that you're saying some words. That's the actus. The offensive words are the actus reus, but there's an additional mens rea that has to be addressed. We have to know that what you're doing is intimidating. To other people, yes. You have to have that awareness and that's not what is captured by Kelly because it relies on that intimidation just on a reasonable person standard, which doesn't ask about the awareness of the defendant or even the victim. It's a made up victim that that reasonable standard actually addresses. So and I think this is super clear when you look at Counterman, Counterman makes that distinction. Well, Counterman is a First Amendment case and it does seem that the court is writing it in that more narrow lens of what the First Amendment also requires. I understand. It allows in terms of comments. I do understand that, but what it does illuminate in light of Borden is that this division that the Chief Judge is making, there's an actus reus, which is only the statement, the content of the words, that's the actus reus, but it's missing. You can't just convict someone based on the content of the word. There has to be proof of a separate independent mens rea for the defendant to have criminal culpability there. In a like way... And the mens rea is knowing intimidation. You can know that what you're doing is intimidation. That's not what the law says. It says reasonable person, which again, doesn't go to the defendant's awareness. You're confusing two things. Whether the person is intimidated, whether it has that effect, and knowing that is one thing. We said that isn't required to be proved, but knowing whether what you do is intimidating is another thing. And it's a knowledge requirement as to that. Well, I will just... And there's nothing about this that equates it with recklessness. It's reckless because it doesn't require the defendant to have knowledge to a practical certainty that his words and actions are threatening or intimidating. And I'm just going to compare it to other circuits that have dealt with this issue differently than Kelly did. So in United States v. Slater, which is an old 10th Circuit case, but it's still good law, and it's very clear, they actually state that their test for the intimidation part of bank robbery is not a purely objective one. Whereas Kelly says it is purely objective. And it says it has three factors that the court looks at. The first factor is whether the situation appeared dangerous. The second element is whether the defendant intended to intimidate. So that's actually the independent mens rea that I'm talking about. And then the third one is whether bank personnel were reasonable in their fear. So it considers all of those factors, and it specifically carves out a factor for the defendant's mens rea. That's what Kelly does not do. If Kelly did that, then we wouldn't be having a problem. But it doesn't do that. It relies solely for intimidation on the reasonable person standard, which doesn't care about anybody's state of mind, not any real person's, but only a reasonable potential person out there that's reasonable. There's another case, United States v. Ellison, which is out of the First Circuit. It was decided in 2017. And the way that the court was talking about it, it agreed that the government had to prove as a separate matter the defendant's mens rea. You can't just rely on the words and the actions. That doesn't do all the work. It's a separate mens rea component. And it said that the defendant actually has to know that his actions and words are going to be received by others as intimidating. And Ellison also pointed out, specifically mentioned the Kelly case, and noted that the Kelly case didn't appear to have that other additional mens rea for the defendant. Can I ask you to address, before you sit down, the enumerated crimes provision? I take it that your position is that all the arguments you've been making apply equally to enumerated crimes. They do, because I do think that this mens rea that exists in Kelly is a little unique. And so, if you agree with us on the mens rea issue that we've argued in favor of the elements clause, then we would submit that the bank robbery does not meet a generic definition for robbery. The version of the guidelines that we're going under for this case, robbery is listed, but it's not defined further. So it's just the generic definition. And we believe that it's not generic because of this unique mens rea issue. Right. And just so I understand what your position is, I mean, you're saying like, look, robbery has this common law definition that requires more than what the federal bank robbery requires via mens rea. That's what you're saying? Yes. I mean, it's based on what, you know, what the other states do, what the model penal code, all that stuff. But we, I believe that this mens rea issue is unique because the other circuits seem to have this separate. Of course, Sam said already held that it satisfies the enumerated. I did want to address Sam's. I know Sam's was in commentary, it's since been moved to the text of the guideline, which of course the commission can do as clarification. It seems to me we're just bound by that. I would like to address Sam's if I could, but I am out of time. I gave you 30 seconds. Okay. Sam's did not decide this issue. It never considered, the parties didn't raise. It was a pro se 2255, SOS 2255 on the heels of Johnson. And so, you know, as I mentioned in my brief, that has potential due process issues of its own. I'll just state that here, but . . . We've already held that those . . . I understand. My main point is that the pro se defendant didn't raise mens rea, neither did the court even though it was dealing with a pro se defendant. We didn't mention Kelly, didn't mention . . . It was necessary to our decision. You couldn't go forward with the application for a second or successive unless you could satisfy the threshold and we said it doesn't. But in Sam's, all it compared was the actus reus of intimidation versus the actus reus of a threat to use force. Thank you. Thank you, Ms. Foltes. You know, it's just another morning of the trip down the fantastical lane of the categorical approach where we're deciding whether federal bank robbery is a crime of violence. Mr. Press. Good morning, Your Honors, and may it please the court. Cole Press on behalf of the United States. The prior panel precedent rule compels the court to affirm the sentence below. Mr. Pinkston's invitation for the court to overturn its own precedent is based on overly broad interpretations of marginally relevant case law and fundamentally flawed readings of the court's prior decisions. So before I get into discussing Kelly and Counterman, I do want to sort of raise the obvious point, both in Ray Sam's and United States versus Armstrong definitively held that bank robbery is a crime of violence. The court really need no go further than there. So there's nothing in Borden that's missing from our current precedent that needs to be incorporated? Well, Your Honor, I would say that even if we could argue that Armstrong, for example, because that was post-Borden, should have considered Borden or should have discussed Borden, the fact that the prior panel failed to consider a specific argument is not an exception to the prior panel rule, nor is an exception to the prior panel rule if the prior panel argued to misapply the law as it exists at the same time. It looks to me like, though, there's some confusion maybe in our pattern jury instructions and case law about this that we could settle as to the elements clause and say, look, this is a crime that requires knowledge as to the actus reus, and we could settle some things. Sure. I think so, Your Honor. I think Carter, and I'll get into that in a moment. Carter sort of lays out the groundwork here. I think the issue and sort of the premise of which Mr. Pinkston's argument is based on is sort of this, I wouldn't call it a misreading of Kelly, but maybe a broadening of Kelly. I know Your Honor wrote Kelly, so I know you're familiar with the contours. Kelly says nothing about recklessness. It says nothing about mens rea. It is only discussing, as Your Honor has pointed out, the subjective person standard and how to measure whether an act was, in fact, intimidating. It says nothing about knowledge. It says nothing about intent. Or intending that effect. Correct. Exactly.  Carter, again... You can have knowledge that what you're doing is intimidating without intending that effect. That's exactly right. That's United States v. Horstein, which I know is unpublished, but it did rely on Carter, which of course Carter set forth that there is this general intent and that there must be, obviously, the defendant must do an act of, you know, force, violence, or intimidation, and he must know that the act is forceful, violent, or intimidating. Now, of course, Kelly comes into play when we decide, you know, if the act was intimidating, but the defendant's knowledge in doing that act comes from Carter and still requires that knowledge and still requires that mens rea beyond recklessness. Can I ask you a question? Just go back to the Henry Sams issue just for a second. Sure. Just sort of a more broad, kind of broad-based question. Something that I'm struggling about in a number of these cases is the Supreme Court sort of touches this crime of violence issue, like every three years, and changes the law just a little bit, I think. How do you envision that we should address those Supreme Court decisions in light of our prior precedent? Like, what is the test we should be applying in cases where someone raises an argument, like in this case, and they say, well, look, Borden says something different than the Eleventh Circuit has previously said, and so you need to just kind of redo your case law on that. So this isn't a, I admit, this isn't a neat analogy, but the first thing that came to my mind, you know, the wonderful world of ACCA, right, and all these changes and all this spilled ink, I think of actually Dubois and Heller and Bruin and Rahimi. We had that issue come up in Bruin and Rahimi, where you have a litany of defendants say, well, you know, 922G is unconstitutional now, we have to do the Bruin-Rahimi test, which sort of abrogated Rozier, and now we have to look into it, and, you know, the court spent, they've got two members of the Dubois panel up here, I know they know, how difficult that is, and sort of, like, tamping that down and sort of, you know, keeping the prior panel precedent. The prior panel precedent rule is very strong. It's 100%, Your Honor. It has to be, it has to knock out, for it to be abrogation, it has to knock out every final precedent. Eviscerate and demolish, yes, Your Honor. That's what you said in Dubois, and I think that's the reason the prior panel precedent rule exists, is it understands that on the margin, the law might change a little bit, but the core basic holding of the court's prior precedent remains the same and should remain the same. It should not be disturbed, unless there truly is something that attacks it or weakens it or, you know, demolishes or eviscerates it. Let me see. I do want to also... You don't have to make, you know, fantastical hypotheticals to try to save it. I mean, it may well be that intervening Supreme Court precedent comes in, and you just really can't square what the court said in a slightly different context with what we've previously held, and we can have abrogation, but it's a tough test. Sure. I totally agree with that, but we certainly don't have that here, Your Honor. I mean, 10 circuit courts, both pre- and post-Borden, have consistently held that bank robbery is a crime of violence. Yeah. Well, I guess that goes to the question I have, which I'm not going to belabor this, but are we supposed to say, in this opinion, are we supposed to say, we've looked at our prior precedent, not only on prior precedent on federal bank robbery, but prior precedent on how you determine whether something's a crime of violence? And we've looked at Borden, and Borden doesn't eviscerate our prior precedent on how you determine whether something's a crime of violence. It doesn't eviscerate anything about federal bank robbery, and so that's it. Or should we say something like, look, we have this prior precedent. We've read Borden. Even applying Borden, it's still correct. Right. Is that what I'm saying? Yes. I mean, I think both are correct. I think, obviously, the prior precedent rule controls, but I also think this Court's precedent pre-Borden is consistent with Borden. Like I said, it's Horstein, which is unpublished, but Horstein very clearly said that reckless or negligent conduct is not sufficient mens rea under bank robbery, so I would suggest merely incorporating that into a published opinion if that's sort of the concern about smoothing and paving things over, kind of solving this confusion, this unintended confusion from Kelly. Either approach, what you're saying, would be acceptable. Correct, Your Honor. And I think just getting into that, I want to address my friend on the other side's point about sort of Borden and what it says, specific intent versus general intent. Chief Judge Pryor, you got exactly right. Borden does not say that specific intent is required. General intent is good enough. This Court held in many cases, United States v. Romo v. Lobos, one of them, that a general intent crime has a mens rea above recklessness, which is all that Borden requires. And then in Somers, it made clear, Somers won, there's a few of them in this case, that you have to have the general intent to take the act, and you also need to direct the act to another person. And Carter, Kelly, Sams, Armstrong, all these cases confirm that to do a bank robbery, you have to have the volitional act, and you have to know the act is intimidating. And that's sufficient under Borden, clearly. I think a hypothetical to show sort of the weirdness of Mr. Pinkston's position is, imagine you had a case where a person's walking to a bank, they're approached by a stranger outside the bank, and the stranger hands them a note and says, hey, could you pass this to the teller in window number two? It might be very reckless for the person not to look at the note, but if he passes the note up to the teller number two, and the note says, you know, I have a gun, give me all the money right now, I would submit that's not a bank robbery. Even though under Kelly, that would be a bank robbery if it was just Kelly, because certainly it's objectively intimidating. But the defendant in that case lacked the knowledge that what he was doing was objectively intimidating. So I think that shows sort of the weirdness of their position and the untenability of it, quite frankly. I also want to turn now to Counterman. I know, Judge Abudu, you pointed this out, and I agree, Counterman really isn't on point here. Well, I didn't, I was asked. Sure, sure. But I would suggest Counterman's not really on point here. Certainly it's, Counterman's about a true threats crime. The Supreme Court was very clear in Counterman that it was only resolving two issues, whether the First Amendment requires proof that a defendant, excuse me, of a defendant's subjective mindset in true threats cases, and if so, what that mens rea is here. Now I would submit to your honors that bank robbery is not a true threats crime. Certainly it sort of involves speech, because intimidation can involve speech, but bank robbery can be accomplished by force, it can be accomplished by violence. You can intimidate without any words. So at best, it incidentally burdens speech, so we don't have the First Amendment concerns present in Counterman. And even if your honors agreed to Counterman, or thought that counter, excuse me, that bank robbery was a true threats, a quasi-true threats crime, Counterman only says that a purely objective. A minimum of recklessness conduct, to avoid chilling First Amendment. Correct. But we don't have a concern about that if it actually requires knowledge. That's exactly right. You beat me to the punch there, your honor. Yes, sir. Can I ask you a question about the enumerated crimes? So I, because I see their argument being slightly different, and maybe I'm, maybe I'm not seeing it right, but under the, under the use of sort of the, the crime of violence that we've been talking about, use of force, they have to show, you know, they're talking about sort of something, recklessness, or, or some kind of different mens rea. But the enumerated crimes provision really just ask, well, look, does this fit some generic definition of robbery? Does this fit a generic definition of robbery, do you think? I think it does, your honor. My recollection of Carter, and I admit, I'd want to look back at this to, to be 100% sure for your honor. I don't want to speak out of turn. But my recollection of Carter, in the majority opinion, is they do use the common law definition of robbery and incorporated that into the bank robbery definition. I think bank robbery adds on top of the common law definition of robbery, but it's not, it's not divorced from it. It's not like Congress created a whole new crime and ignored sort of the common law definition. I mean, my understanding of the federal bank robbery, which maybe I'm wrong, but my understanding is it's basically like the thing that Congress did was take a robbery and say it's of a bank, and the thing that they added to like robbery was a bank. 100% agree, your honor. I agree with that. I guess, what do you say about their position that, that there's something about federal bank, like just, to you this is different from the mens rea thing.  What do you say about their position that there's something about federal bank robbery that makes it different than the enumerated sort of generic robbery? I mean, I think the only thing I would say to that, your honor, is I just think it's wrong in light of Carter. I think, I think Carter squarely refutes that position. And I don't really think of anything more to add to that, quite frankly. Your honors, I am prepared to talk about the aggravated assault issue, but it sounds like the panel does not have an appetite for it. Well, your opponent, your adversary didn't raise it. She relied on her brief about it. I think I would only just say that Summers III. If you want to give her an opportunity to make an argument that you have no chance to rebut. I would only. It's her business. I understood. I will only say in one sentence, Summers III controls, and Anderson is a Seventh Circuit case that this court obviously doesn't have to or shouldn't rely on because it conflicts with this court's precedent. It's simply wrong on how to interpret Florida law. I might have something to say about the Seventh Circuit decision, but you're right. Summers binds us regardless. Les, I'm happy to answer any more questions if the court has them. And if not, we'd rest in our briefs and ask the court to affirm the sentence. Thank you. Thank you. Ms. Foulders. So, one thing I just wanted to start with was the Kelly case and how this actually plays out shows that it is a different mens rea than knowing that you're talking about. And I never said specific intent was required. I didn't. I said that Borden's knowledge level with the defendant's awareness was required. And if you look at the jury instructions that we currently have that we still have for bank robbery by intimidation, it only has two elements. The first one says that the defendant knowingly took from somebody. That's the first element. The second element is that the defendant did so by intimidation. So that knowingly word, it's only in the first element. It's not in the second element. So it's clear that it's not there. I thought you and I had settled that the actus reus is knowledge. That would be with respect to both aspects of the actus reus. Except that. Not only the taking, but by violence or intimidation. I guess I disagree. Knowledge is, that's part of the actus reus, isn't it? I disagree with the way you're parsing it out because the knowledge with the defendant's awareness is what's required in Borden. And that's not what Kelly does. That's not what the jury instructions do either. You can be, this is the point I was making earlier. You can be aware that what you're doing is either using violence or conduct that is intimidating without requiring proof of intent to have that effect on someone. Borden requires it. Borden does. In order to get the enhancement. You may not need it to convict someone of bank robbery as it currently stands. And we certainly don't have that in the circuit. But Borden, for the enhancement, does require it. And I also just wanted to go back to the Sams and Armstrong cases. You know, the way that this court has ruled in Jackson in 2022 is kind of similar to the situation we have here. It dealt with the same definition about the serious drug offense. But with Jackson, early on, they settled the mens rea part of it in the Smith case. Later on, then they settled parts of the actus reus, like what is a controlled substance. So I would submit that this case is exactly like the Jackson case and that it is an unresolved issue that this court should reach. It's not just a forgotten argument. It's actually a very substantial issue in criminal law about how this provision operates. And so I submit that the prior panel precedent rule is not a bar to considering the merits. And there are many, many good reasons to address it so we can all go on with our lives and understand what the law is and make sure that it does match up with Borden. And to the extent that it does not at this point, you know, the ruling has to be what it is, because it's already preceded under the law that we currently have, which is the Kelly case, which I submit does not meet the Borden requirement. And so we would just ask that the court reverse and remand without the enhancement, because it doesn't meet Borden. Before you wrap up, let me just, so I asked you for a hypothetical when you were up here before and you pointed me to a case, Yakov, is that the name? Yakov. Yakov, I do have the... Do you have a site for that? I do. I'm not sure I have it under my fingertips, but I'll try. Let's see. One second. I can submit it as supplemental authority, because I don't seem... I looked through your briefs, I didn't find it, so that's why, but I thought maybe I didn't... Do you know how to spell it? Yeah, it's Y-O-C-K-E-L. Okay. What about the circuit? It was the 8th Circuit, I believe. All right. I can find it without... And Yak... Yes. It's 320 F 3rd 818, 8th Circuit, 2003. All right. Thank you, Ms. Folgers. Thank you. We're going to move to our last case.